ATHERTON *v.* TILTON.

If a request to charge the jury states a proposition true in general, but not so in its application to the case on trial, the instruction should not be given.

A laborer, who is to be paid monthly a share of the net profits of the business, having no other interest in the property or profits, is not a partner with his employer as between themselves.

He may, under certain circumstances, be held liable for debts contracted in the course of the business, but will have no rights as a partner in debts due for property sold to others.

What is said by the parties to a sale relative to it during its negotiation, may be admissible in evidence as part of the *res gestœ.*

ASSUMPSIT for a boiler, steam-pipe and other machinery, sold and delivered.  The plaintiff, Thomas Atherton, owned and carried on a machine-shop in Lowell, Mass.  The machinery was delivered to the defendant, Alexander H. Tilton, at Sanbornton, N. H., where the defendant lived, and was put up in the defendant's mill by one Shaw.  There was a written agreement between the plaintiff and Shaw by which the plaintiff was to manufacture machinery, and Shaw was to travel about the country, and sell it and put it up, and the profits were to be divided between them.  It was as follows :

"The undersigned, Thomas Atherton and James Shaw, hereby

agree to and make the following contract: namely, said Atherton is to continue his machine business in his own name, and hereby agrees to employ said Shaw to labor for him in said machine business, to begin on and after the first day of March current, and to continue until said Atherton or said Shaw shall give the other party one month's notice.   The said Atherton is to pay said Shaw the following compensation, at the end of each month from the commencement of this contract, and each settlement said Atherton shall pay said Shaw one half the net profits of the business, after deducting therefrom the sum of twelve dollars, which said twelve dollars is hereby considered the interest of the capital now invested in the tools and stock now on hand, belonging to said Atherton. Either party may annul this contract by giving the other party one month's notice.

Witness our hands this 5th day of March, A. D. 1860.

                                     THO'S ATHERTON,
Witness:   J. C. KIMBALL.             JAMES SHAW."

One Davis, a witness called by the plaintiff, testified that Shaw and the defendant came to his place of business at Cambridgeport, Mass., to buy a boiler.   Subject to the defendant's exception, Davis testified that after the defendant went away Shaw said that he was connected with the plaintiff, or that he acted for the plaintiff as agent, and that the plaintiff would pay for the boiler; that the witness afterward asked the plaintiff if he would pay for it, and the plaintiff said that the boiler was ordered for him, and he would pay for it, and that the plaintiff did pay for it.

The plaintiff testified that the defendant came to his shop in Lowell while the machinery was being made; that Shaw there introduced the defendant to the plaintiff; that nothing was then said between the plaintiff and the defendant about the machinery bought by the defendant; that at that time Shaw was at work in the shop; that on the outside of the shop was the sign, "Thomas Atherton, Machinist;" that the plaintiff owned the shop and all the tools and machinery used in it, or used in putting up machinery, all the machinery manufactured there, and the boiler and all the machinery sold to the defendant.

The defendant moved for a nonsuit on the ground that the written agreement showed that the plaintiff and Shaw were partners. The court overruled the motion, and the defendant excepted.

The defendant called Shaw as a witness, who testified that he bought the boiler of Davis on the plaintiff's credit, and that the plaintiff paid for it, and that the boiler, steam-pipe, and other machinery belonged to the plaintiff; that Shaw sold the property to the defendant, and told the plaintiff that he wanted the property to pay Tilton what he was owing him, and he requested the plaintiff to charge the property to Shaw, and the plaintiff agreed to do so.

The plaintiff testified that he had no such conversation with Shaw.   Shaw and the defendant both testified that the defendant had paid Shaw only $10 in money; that the defendant, before he was notified that the plaintiff claimed of him the price of the machinery he bought, had paid notes which he had signed as

surety for and with Shaw to the amount of several hundred dollars; that the defendant had assisted Shaw in buying a homestead, for which assistance Shaw agreed to pay him $100; that they had never had a settlement, but he thought Shaw was owing him about $600. The plaintiff claimed $651.69. The jury returned a verdict for the plaintiff for $602.32.

The defendant's counsel, in his closing argument to the jury, relied wholly upon the defense which Shaw's testimony tended to prove; that the property belonged to the plaintiff; that the plaintiff agreed that Shaw should sell it to the defendant in payment of what Shaw was owing him; that the plaintiff agreed to trust the property to Shaw, and to charge it to him; that Shaw owed the defendant about $600, and the defendant claimed the right to appropriate the property in payment of Shaw's debt to him; and there was no evidence to establish any other defense unless the written agreement between Shaw and the plaintiff is such evidence.

The defendant requested the court to instruct the jury "that the contract between Atherton and Shaw, of March, 1860, taken in connection with the other evidence in the case, made them partners."

The court declined to instruct the jury as requested, but did instruct them that the plaintiff and Shaw were partners to some extent and for some purposes; that Davis might have maintained an action against them as partners, to recover the price of the boiler; that they would be liable as partners for what they bought in carrying on their business under their written agreement, but that no question of their liability as partners was raised in this case; that if Shaw's account of the transaction was correct, as the defendant claimed, the plaintiff could recover nothing; that if Shaw sold the property as agent of the plaintiff, as the plaintiff claimed, the plaintiff could not recover that part of the price which the defendant paid to Shaw; that the first question was, (as it was admitted that the plaintiff once owned the property and that the defendant had bought it), Was it sold by the plaintiff to the defendant through Shaw as an agent, or was it sold by the plaintiff to Shaw, and by Shaw to the defendant? Were there two sales or only one? That if the plaintiff sold it to Shaw, and Shaw sold to the defendant, the plaintiff could recover nothing; but if it was sold by the plaintiff, through Shaw as an agent, then they would consider the question whether the defendant was aware ot the plaintiff's title and of Shaw's agency; that if he was so aware he would have no right to apply property which he knew to be the plaintiff's to the payment of his own claims against Shaw; that if the defendant was put upon inquiry as to the title, if he had any knowledge, belief or suspicion which would have led a man of ordinary care and prudence to make inquiry, then he was chargeable with knowledge of all such facts as a man of ordinary care and prudence would have made in his situation and circumstances; that if the property never belonged to Shaw the defendant would have no right to apply it to the payment of his claims against

Shaw after he was informed that it belonged to the plaintiff, and not to Shaw.

The defendant excepted to the instructions given, and to the refusal to give those requested, and moved to set aside the verdict.

*Eastman & Cross*, for the defendant.

1. The agreement showed that the plaintiff and Shaw were partners, and the court erred in denying the nonsuit, and also in the instructions given to the jury upon this point. *Bromley* v. *Elliot*, 38 N. II. 287, and cases cited.

2. The testimony of Davis was inadmissible. The defendant was not present, and the evidence was incompetent as against him.

3. The instructions of the court in regard to the agency of Shaw, and the application of the money paid by the defendant, were too strong, and were calculated to mislead the jury.

*J. C. Kimball*, of Massachusetts, (with him *G. Y. Sawyer* and *S. N. Bell*,) for the plaintiff.

1. The plea of partnership is inconsistent with the defense set up at the trial of this cause, and contradicts and discredits both the defendant and his witness. This plea is not, therefore, open to the defendant. *Clark* v. *City of Lowell*, 1 Allen 180.

As the written agreement in question was made in Massachusetts, where the parties thereto then resided, its legal character should be determined by the laws of that State. *Banchor* v. *Cilley*, 38 Me. 553; *Torrey* v. *Corliss*, 33 Me. 333.

Now this written contract does not create a partnership by the laws of Massachusetts, either *inter se* or as to third parties. *Denney* v. *Cabot*, 6 Met. 82; *Bradley* v. *White*, 10 Met. 303; *Baxter* v. *Rodman*, 3 Pick. 435; *Bailey* v. *Clark*, 6 Pick. 372; *Turner* v. *Bissell*, 14 Pick. 192; *Blanchard* v. *Cooledge*, 22 Pick. 151; *Bulfinch* v. *Winchenbach*, 3 Allen 161.

Nor would this be otherwise by the law of this State, so far as the nonsuit is concerned. *Gibson* v. *Stevens*, 7 N. H. 351; *Clement* v. *Hadlock*, 13 N. H. 186; *Newman* v. *Bean*, 21 N. H. 93. The case of *Bromley* v. *Elliot*, 38 N. H. 287, which is cited in the defendant's brief, does not decide the question of partnership raised by this point, nor has it any direct bearing upon any other issue of law in this case. The court, therefore, at *nisi prius*, was correct in the enunciation of the law upon this point, and is sustained not only by the law of partnership in Massachusetts and this State, but in every other State in the Union. *Dwindle* v. *Stone*, 30 Me. 384; 38 Me. 553; *Knowlton* v. *Reed*, 38 Me. 216; *Griffith* v. *Buffum*, 22 Vt. 181; *Patten* v. *Moses*, 1 R. I. 430; *Loomis* v. *Marshall*, 12 Conn. 69; *Burkley* v. *Eckhart*, 3 Comst. 132; *Chase* v. *Bartlett*, 4 Paige 148; *Miller* v. *Bartlette*, 15 S. & R. 137, and many other cases cited; *Ward* v. *Thompson*, 22 How. 330, in the U. S. Court; *Hoare* v. *Dawes*, 1 Doug. 371; *Batard* v. *Hawes*, 2 E. & B. 287. This doctrine is also laid down by the ablest writers on partnership. Coll. 10; Stor. 51; Gow 10; Carey 1; Watson 5; 3 Kent Com. 21.

The instructions of the court upon this point, complained of by

the defendant, were elaborate, full and complete, and are supported by the clearest principles of law and the soundest dictates of common sense.

2. The testimony of Davis, which the defendant objects to, was competent : first, because it was a part of the conversation of the plaintiff and his agent in purchasing the boiler in question, and was, therefore, part of the *res gestæ*. Greenl. Ev., ch. 5, sec. 108. Second, it was a declaration accompanying a material act. *Ib.* Third, if the evidence was not competent at the time of its admission by the court, it became so afterward by its being proved and admitted by the defendant at a later stage of the case.

3. The instructions of the court upon the matter of agency were more favorable to the defendant than the law of agency will sustain, and were, therefore, a much better ground of congratulation on the part of the defendant than of exceptions. *Huntington* v. *Knox*, 7 Cush. 371; 5 Gray 571. The difficulty of the defendant upon this point, as upon all other points in this case, was in the facts and not in the exposition of the law — the jury failing to find the necessary evidence to sustain his plea in bar.

The law touching the application of the money in question was properly stated to the jury by the court, and the jury could not have been misled thereby, as claimed in the defendant's brief, inasmuch as they allowed the party defendant the amount of cash which he paid Shaw, as payment in part of the bill of goods put in suit.

BELL, C. J. The charge which the defendant's counsel requested the court to give to the jury, that "the contract between Atherton and Shaw, taken in connection with the other evidence in the case, made them partners," was not proper to be given, unless it made them general partners. If a position is true in some degree, and for some purposes, yet if given unqualifiedly, as requested, it is not true, and is calculated, if so stated, to mislead the jury, it ought not to be given.

The purpose of the defendant in raising the question, whether Atherton and Shaw were not partners, was to defeat the action of Atherton alone. The question on that view of the case was, not whether they were partners in any sense, or in any degree, or for any purpose, but whether they were partners in the contract which formed the ground of action. They might be partners in other transactions ; the question here was, if they were partners in the transaction in suit.

Now as between these parties they were clearly not partners. Atherton agreed to employ Shaw to labor for him in his business ; to settle with him monthly, and to pay him one half of the net profits of the business. Shaw was a laborer for Atherton. Atherton owned and controlled the business, and the property embarked in it. Shaw had no interest in any part of the business, or of its profits or proceeds, until a settlement had been made, the half profits ascertained, and the amount paid over to him. It was then that he first became owner of his share of the profits, but that share

he did not hold as a partner. Atherton had no longer any interest in that share after this payment. It was the sole property of Shaw. As between themselves this was no partnership. The purchases of stock made by Atherton were on his own credit, for his own use, and the property purchased was his own, and when manufactured it was still his; if sold by Shaw according to the written contract and Shaw's testimony in regard to it, it was sold as Atherton's property. Shaw had no interest in the property, or in the price of it, until by a settlement it was determined that there were some net profits accruing from the business, when he would have not a partner's but a creditor's claim for the half of those profits, as his compensation. But he had no right or interest even in the profits of any particular adventure; as, for example, in the sale to the defendant here in question. From that transaction a good profit might accrue, but if other sales of the month, other purchases or contracts, were at a loss of a greater amount than those profits, Shaw had no claim to any compensation, because there would be no net profits, which alone furnish the measure of his compensation.

Where parties are not partners as between themselves, but one party, under whatever pretense, shares in the profits of the business which the law regards as the legitimate fund to defray the losses, the party who thus takes the profits is held chargeable as a partner for all the debts of the concern contracted with persons ignorant of their true relations. They are so held on considerations of public policy, and for the purpose of discouraging frauds for which otherwise partnerships would form a very broad cover and screen. This liability is not founded on the existence of any partnership relation whatever, actual or presumed, and is not affected though it should appear that there was no partnership in fact.

Here Shaw might perhaps be liable under the contract between him and Atherton, if its existence and character were kept secret to the creditors of Atherton, for the debts incurred in the course of the business. But here there is no question of liability for debts. The question was as to the person by whom and with whom this contract of sale was made. If the property sold was Atherton's; if it was sold by him, through his agent Shaw, as his property; if the contract of the defendant was made to pay him for it, the present action was well brought, and this none the less though the man who sold the property might well maintain an action against Atherton and Shaw for the price of it, on the ground that as to him they were liable as partners. But if the boiler was bought by Shaw as the agent of the plaintiff, on his credit, and it was paid for by the plaintiff, and if it was sold by Shaw as the plaintiff's agent, as the property of the plaintiff, the plaintiff can well maintain this action.

On the other hand, if Shaw, in pursuance of the negotiation between himself and the defendant, without reference to any agency of Shaw for Atherton, went with the defendant to the shop of Davis, and there purchased the boiler as for himself, and sold it as his own property, it might be questionable if the plaintiff must not be the sufferer for the wrongful acts of his own agent.

So if the sale was made to the defendant by Shaw, in pursuance of an arrangement between Shaw and the plaintiff, that Shaw should sell the boiler to the defendant in payment of his own debt, and that the boiler should be charged by Atherton to Shaw, then Atherton must look to Shaw for his pay, and has no claim whatever on the defendant, Tilton. These were the views of the judge who tried the cause, and they were presented clearly and distinctly to the jury. The charge as made was in our judgment correct, and the charge requested was properly refused.

The nonsuit was properly declined, because the evidence did not necessarily prove the plaintiff and Shaw to be partners, even if it was capable of such construction as to justify that conclusion. There was evidence tending to prove that they were not partners, which it was competent for the jury to weigh, and their verdict finding that fact could not be set aside as against or without evidence.

Exception was taken to the admission of Davis' testimony as to the statements of Shaw to him, after Tilton had gone away, as to his buying the boiler as agent for Atherton, and as to Atherton's agreement to pay for it as purchased by Shaw for him. We think there was no foundation for the exception. Statements and recitals, made in the presence of a party, are often admissible on the ground of presumed assent, but not declarations of third persons made in the absence of the party to be affected by them. But the statements testified to by Davis were not recitals of a past transaction. They were part of the negotiation then actually taking place between Shaw, as agent of Atherton, or for himself, for the purchase of the boiler. To this transaction Tilton was no party, and what was said could derive no credit from his presence, or from any presumed assent of his. It was a material fact that the boiler in question was the property of the plaintiff, and equally material to show how it became his, and it was material and competent for the plaintiff to show what passed between the parties relative to the purchase as indicating for whom the purchase was made.

*Judgment on the verdict.*