Hillsborough, } No. 3445.
Feb. 1, 1944. }

WILLIAM GLASER *v.* MEDFORD-MARLBORO KNIT GAITER CO. & *a.*

*Samuel A. Margolis* and *Maurice Palais* (of Massachusetts), (*Mr. Margolis* orally), for the plaintiff.

*Homer S. Bradley, Philip H. Faulkner* and *Arthur Siegel* (of Massachusetts), (*John E. Allen* on the brief, *Mr. Bradley* orally), for the defendants.

BURQUE, J.   The only issue argued is the construction of clause (c) in the agreement.

In addition to what appears in the Court's findings, we might add for further assistance in the discussion of the issue, the following portions of the agreement in question.

"AGREEMENT made this 25th day of June, 1940, between the Medford-Marlboro Knit Gaiter Co., a corporation organized under the laws of New Hampshire, with its usual place of business in

Marlboro, New Hampshire, hereinafter referred to as the 'Company', Arthur Quint, of Keene, New Hampshire, also doing business as Essex Yarn Co., in Marlboro, New Hampshire, hereinafter referred to as the 'Guarantor', and William Glaser of Boston, Massachusetts, hereinafter referred to as the 'Mortgagee', WITNESSETH:

"WHEREAS the said Company is desirous of borrowing the sum of four thousand ($4,000) dollars from said Mortgagee for the purpose of carrying on its business, in which Company the said Guarantor holds one hundred ninety-eight (198) shares, without par value, of the two hundred (200) shares, without par value, authorized and outstanding and who is also the Treasurer, Clerk and Director of said Company, and who is desirous of protecting his and the Company interest in carrying on and developing the business of said Company through the financial assistance which the said Mortgagee has agreed to render by making said loan of four thousand ($4,000) dollars;"

Sections (a) and (b) of the agreement refer to the loan and the security to be given therefor and the stipulations are given succinctly in the second and third paragraphs of the Court's findings.

That a written contract may not be explained, varied or contradicted by oral evidence is an elementary principle of law. "Parol evidence is not admissible to show that common words, the meaning of which is plain, and which do not appear from the context to have been used in a peculiar sense, were in fact so used." *Goodwin* v. *Goodwin*, 59 N. H. 548, 550. We construe the contract, in accordance with the ruling of the trial Court to the effect that it was a contract providing for the giving of collateral security to subsist only as long as the obligation existed. Once the loan was paid there was no longer any reason for the continuance of the security. And this applies not only to the principal amount loaned and interest to be paid thereon, but also to the bonus that went with it. This is the only sensible and reasonable meaning to be given to the language used. Plaintiff's claim that the payment of the bonus was to continue as long as the defendants remained in business is too preposterous to merit serious consideration. Having in mind that the contract was drawn by an attorney representing the plaintiff, there can be no question but that if the parties had contemplated any such intention as is now claimed by the plaintiff, adequate language would have been used to express clearly and definitely an agreement of such importance as this was to all parties concerned. In the absence of such language, neither defendant Quint (nor the average person)

could have been expected to have understood that he was binding himself and his companies to the extent that he and his companies were obligated to pay the plaintiff a bonus of $500 so long as he and his companies did business, whether profitably or not. Such an agreement as is now being claimed to have been entered into demanded strong, clear and unequivocal expression. If, to use common parlance, plaintiff sought by the use of indefinite phraseology to put something over the defendants, he has failed miserably. We cannot subscribe to such an inequitable claim as that advanced by the plaintiff and we very readily join with the Presiding Justice in his findings and rulings, which we affirm *in toto*. Many valid and plausible reasons could be given therefor in addition to what is said by the Presiding Justice in his findings and rulings; we see no need of expounding them.

This should dispose of the case, but plaintiff now advances the claim (not set forth at the trial), that the agreement constituted a contract of joint adventure, and judging from his brief, apparently lays more stress on this than on the bonus issue, thus commanding attention and consideration.

The joint adventure concept, of modern origin (30 Am. Jur. 676) is closely allied with a partnership (*Ib.* 679), especially a limited one. "A joint proprietary interest and a right of mutual control over the subject-matter of the enterprise or over the property engaged therein is essential . . ." *Ib.* 682; and it is not enough to furnish the capital needed to finance the enterprise, even if the borrower is to pay the lender some share of the profits received, when the lender has no control over the enterprise and while sharing in the profits, is liable for no part of the losses. *Ib.* 688. All authority is to this effect. 33 C. J. 842, *s.* 4; 48 A. L. R. 1072; 63 A. L. R. 914, 919; 138 A. L. R. 976, 990.

The contract here is a Massachusetts contract, and the requirements for a joint adventure there are no more liberal than those generally established. The mere agreement to share in the profits of a business is not enough to create relationship, and the Massachusetts cases are definite against the plaintiff's position. In *Estabrook* v. *Woods*, 192 Mass. 499, 502, 503, the Court said: "When there is an arrangement between two persons that one of them shall receive a part of the profits of a business conducted by the other, the usual test to determine whether he is a partner, liable for debts, is to ascertain whether he has a share or interest in the profits as profits, or whether his interest in the profits is merely as a measure

of his compensation for something that he does or furnishes under a contract. . . . For one to share in the profits as profits . . . he must have a proprietary interest in each dollar of profits as it is earned, so that he then has a right of possession or control of it for the purpose of retaining his share. This involves an ownership of an interest in the business that produces the profits."

This case dealt with a claim of partnership relations, but the test of a joint adventure relation was held to be the same in *Ross* v. *Burrage*, 233 Mass. 439, in which the Court said (*p.* 448): "The difference between a joint adventurer and a partner is that in case of a joint adventure the persons in question are interested in a single adventure, while they are interested in carrying on business together generally in the case of a partnership. *Denny* v. *Cabot* [6 Met. 82] and the doctrine established by that case is decisive authority against the relationship being that of joint adventurers in a case where the employer and employee are joint adventurers, if not employer and employee, as much as it is decisive authority against the relationship being that of partners in a case where they are partners, if not employer and employee." The test must be applicable to a debtor and creditor relationship as to an employer and employee one.

The relation shown by the contract in the instant case is strictly and only that of a creditor-debtor one. By its terms the creditor is called the mortgagee, Quint the guarantor, and the borrower the company. The plaintiff was only a secured creditor and nothing else. He had no vestige of voice in the control and management of the enterprises; had no duties to perform in connection with the conduct of the business; had no supervisory power over it; was not obligated to do anything more after making the loan; had no joint proprietary interest in the business, and reserved no right whatsoever to himself to even protect his loan beyond that of having the privilege to examine the books of the defendants to see to it that he was paid the bonus he was entitled to. Thus the agreement lacked all the requisites usually and invariably found in contracts where the Courts have construed agreements to amount to joint adventures.

As is well said in 33 C. J. 842, *s.* 4 "If money which a person loans to another to be used in a business enterprise is to be repaid by the borrower, whether the venture proves a success or a failure, the contract is ordinarily construed to be one of lending and borrowing and not of joint adventure, and the lender acquires no equitable interest in the property in which the money is invested, . . . even

though under the agreement he is to share in the profits of the enterprise."

The present case is like the following. *Ib.*, note 20 (a). An existing firm owning certain vacant real estate which it desired to improve borrowed $50,000 from a person, who took as security a mortgage on the land with an agreement that he should be repaid his loan and interest with one-half the profits of the adventure, which the firm guaranteed should not be less than $12,500. It held that this agreement did not make the parties joint adventurers. *Curry* v. *Fowler*, 87 N. Y. 33.

We have examined all the cases cited by the plaintiff, but in none where the Courts have held that a joint adventure existed, do we find a state of facts anywhere comparable to those in this case. A review of them would serve no useful purpose.

*Exceptions overruled.*

All concurred.