Hillsborough,
No. 4680.

ADELARD M. LEFEBVRE & a. v. EDWARD WALDSTEIN & a.

Argued October 7, 1958.

Decided November 28, 1958.

454

*Martin E. Loughlin* and *Edward J. Davis* (of Massachusetts) (*Mr. Davis* orally), for the plaintiffs.

*Orr & Reno, John W. Barto* and *Charles H. Toll* (*Mr. Toll* orally), for the defendant Waldstein.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), for the defendant Morris Silver.

BLANDIN, J.   The plaintiffs' main contention is that the promissory notes of $60,000 and $90,000 respectively, dated June 8, 1953, given by the plaintiff Bedford Gardens, Inc. to the defendants Morris Silver and Edward Waldstein, secured by real estate and chattel mortgages of certain property, and the so-called "side agreement" also of June 8, between this plaintiff and the defendants, when considered with certain extrinsic evidence, must be so con-

strued that the defendants should be restrained from foreclosing the mortgages or collecting on the promissory notes. This argument is buttressed upon the proposition that the transaction evinced by these instruments was a joint adventure and that the defendants as participants cannot stand as creditors, but must share in the loss. All parties agree that such is the law of joint adventure or joint enterprise. 30 Am. Jur., Joint Adventures, s. 11. They are also in accord that generally speaking "The exact nature of this relationship has never been previously defined . . . it resembles a partnership and has many of its attributes." *Mendelsohn* v. *Leather Manuf. Corp.*, 326 Mass. 226, 233.

As was said in our case of *Glaser* v. *Company*, 93 N. H. 95, the concept of a joint enterprise is of modern origin and closely allied to a partnership. It binds the parties to share, among other things, control, profits and losses. *Id.*, 99, 100. Whether there is an agreement between the parties to share losses is an important, though not a completely decisive test (48 C. J. S., Joint Adventures, s. 2, p. 811) and whether such a relationship has been created depends upon the intent of the parties, to be determined by the usual rules of construction. *Id.*, s. 2b, p. 813. However, it seems unnecessary to delineate all the characteristics of a joint enterprise as described in numerous authorities. 30 Am. Jur., Joint Adventures, ss. 1-11; anno. 138 A. L. R. 968, 976.

The implied finding of fact by the master, approved by the Superior Court that there was no evidence of a joint adventure is sustainable on the record. *Eastern Electric &c. Co.* v. *Ekdahl*, 84 N. H. 339. It would serve no useful purpose to attempt to summarize the evidence contained in the voluminous record and exhibits. It is sufficient to say that it amply supports the master's findings. In these circumstances, it is too elementary to require citation that our court is bound by the findings.

However, the plaintiff claims that evidence of conversations and transactions between the plaintiff Adelard and Henry Silver, a brother of the defendant Morris, and also between Adelard and Morris, occurring prior to the signing of the agreements of June 8, 1953, was improperly excluded. In respect to the transactions between Adelard and Henry Silver, which took place several years prior to June 8, 1953, it is difficult to perceive what bearing they could have on the present dispute and they were rightly excluded.

In the case of Morris Silver, the plaintiff sought to show that this defendant told him that he would see to it that his brother Henry

did not put in any more money. This the plaintiff was permitted to do, but a further question as to whether, up to the time of the plaintiff's conversation with Morris, there had been any demand by Henry or anyone for the $70,000 advanced by Henry to the plaintiff prior to the execution of the agreements of June 8, 1953, was excluded. In accordance with the modern tendency (IX Wig. Ev. (3d *ed.*) s. 2465) it has long been the rule here that the facts surrounding an undertaking, including conversations in preliminary negotiations, are admissible to aid in interpreting an agreement. *Kendall* v. *Green,* 67 N. H. 557, 562, and authorities (decided 1893); *Weston* v. *Ball,* 80 N. H. 275, 276, 277; *Kann* v. *Company,* 85 N. H. 41, 46, 47; *Perry* v. *Company,* 99 N. H. 451, 454. However, this does not mean that when the parties finally integrate their negotiations into a written agreement in plain, unmistakable terms, parol or other evidence of preliminary negotiations can be introduced to vary or contradict its terms. *Kendall* v. *Green, supra,* 562; *Lancaster &c. Electric Light Co.* v. *Jones,* 75 N. H. 172, 174, 175; *Glaser* v. *Company,* 93 N. H. 95, 98, 99. In the absence of rebutting evidence — and here none was admitted or offered — the parties must be presumed to have used words in their ordinary sense. *Glaser* v. *Company, supra,* 99, 100; *Kendall* v. *Green, supra,* 562. The agreements of June 8, 1953, between the plaintiffs and the defendants, provided in plain and unequivocal language for a loan and its repayment. It follows the exceptions of the plaintiffs to the exclusion of evidence and to the granting of the defendants' motions to dismiss the plaintiffs' bill are overruled.

A further and final question is presented by the defendants' exceptions to the ruling of the Trial Court which limited the damages recoverable on the injunction bond to those suffered on or after February 27, 1956. The bulk of the losses for which the defendants claim they should be reimbursed from the cash deposit were sustained prior to this date. It is true, as they argue, that when an injunction is issued in the circumstances here, "the party at whose request it is issued, ordinarily shall, and in any case may, be required to give bond with sufficient sureties, conditioned to pay and satisfy all such damages as may be occasioned to the adverse party by reason of the injunction, in case it shall appear that the injunction was improper." Superior Court Rule 136, 99 N. H. 629; *Fowler* v. *Taylor,* 99 N. H. 64, 65, and authorities cited. In such cases, counsel fees occasioned by the improper issuance of

the injunction are recoverable. *Id.*, 65; see also, *Gowen* v. *Swain,* 92 N. H. 157.

In *Towle* v. *Towle,* 46 N. H. 431, the court said that expenses incurred both before and after the issuance of an injunction bond, as in the case here, were recoverable. *Id.*, 434. In the case before us, the Trial Court denied recovery for all losses suffered before February 27, 1956, speaking as follows: "The question now before the Court is the determination of damages to which the defendants are entitled under the terms of the bond in accordance with Superior Court Rule 136. One of the major issues is whether damages, including counsel fees, which accrued before February 27th are recoverable or whether the defendants are confined to damages accruing on or after February 27th.

"The Court rules that only such damages as accrued on or after February 27, 1956, are recoverable." It thus appears that a ruling was made as a matter of law that where a bond is given pursuant to Rule 136, there can be no recovery for damages suffered before the bond is filed. We think this interpretation of the scope of the rule, in the light of its purpose, and our previous cases, was erroneous. *Towle* v. *Towle,* 46 N. H. 431, 434; *Fowler* v. *Taylor,* 99 N. H. 64, 65, and authorities cited. Since there was no determination of the amount of the damages including counsel fees and disbursements occasioned by the improper issuance of the injunction, both before and after February 27, 1956, this issue must be remanded to the Superior Court.

The order is

> *Plaintiffs' exceptions overruled;*
> *defendants' exceptions sustained;*
> *remanded.*

All concurred.