**STONE AND MICHAUD INSURANCE, INC.**

v.

**BANK FIVE FOR SAVINGS.**

Civ. No. 90–485–D.

United States District Court,
D. New Hampshire.

March 6, 1992.

**1066**

Richard F. Therrien, Manchester, N.H., for plaintiff.

Steven A. Solomon, Manchester, N.H., John H. Henn, Boston, Mass., for defendant.

## ORDER

DEVINE, Chief Judge.

In this civil action, an insurance agency seeks recovery of more than $95,000 for unpaid insurance premiums for coverage provided for a real estate development. Plaintiff contends that Bank Five for Savings ("Bank"), is liable for the monies owed because the relationship existing between the insured and Bank allegedly went beyond that of borrower and lender and was actually a partnership or joint venture. Plaintiff's amended complaint ("complaint")[1] sets forth three counts: assumpsit, partner in law, and partner in fact. Diversity jurisdiction is properly based upon 28 U.S.C. § 1332.[2] Presently before the court are Bank's Amended Motion to Strike Selected Paragraphs of the Affidavit of Frederick T. Fish and its motion for summary judgment, both of which are opposed by plaintiff. Because the court finds no unusual reasons why oral argument

---

**1.** Plaintiff's original complaint charged Bank with inequitable conduct, violation of the Consumer Protection Act, New Hampshire Revised Statutes Annotated (RSA) 358–A, and civil conspiracy. The amended complaint, however, did not contain these particular counts. "Since an amended complaint normally is treated as completely replacing the former pleading," *Cicchetti v. Lucey,* 514 F.2d 362, 365 n. 5 (1st Cir.1975), the court does not address the original counts. *Accord McDermott v. Biscardi,* 550 F.Supp. 106, 108 (D.R.I.1982) (citing, inter alia, *Cicchetti* ). *See generally* 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[7], at 15–95 (2d ed. 1991) ("amended

pleading that is complete in itself and neither refers to nor adopts any portion of the prior pleading supersedes the latter").

**2.** Plaintiff additionally alleges as a basis for jurisdiction 28 U.S.C. § 2201, which states, "In a case ... within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party." However, as the plaintiff's prayer for relief makes no such request, the court proceeds solely on the basis of section 1332.

would be of assistance in resolving this matter, defendant's request for same is denied. *See* Local Rule 11(g).

## I. The Project and the Players

In the mid 1980s, Frederick Fish, a real estate developer acting individually and/or as trustee of various entities, began to develop a 677–acre area in Francestown and Bennington, New Hampshire. The site included a golf course, a restaurant, an inn, and a small conference center, all of which he hoped to transform into a four-season resort complex also containing condominiums. ("Tory Pines project"). Toward this end, a real estate trust controlled by Fish entered into certain loan arrangements with Bank, a Massachusetts savings bank having a principal place of business in Arlington, Massachusetts. Plaintiff Stone and Michaud Insurance, Inc. ("Stone & Michaud"), a New Hampshire corporation with its principal place of business in Manchester, New Hampshire, provided borrower Fish with the insurance coverage required by Bank. Ultimately, the Tory Pines project faltered, Fish defaulted on a note, and Bank foreclosed in 1990.

## II. Undisputed Facts

The parties present the following undisputed facts. From October 1985 until sometime in 1989, Bank engaged in a relationship with Fish whereby Bank provided financing to Fish for the acquisition and development of the Tory Pines project. The first loan of $2,100,000 was secured by a Mortgage and Security Agreement. In connection with the Tory Pines project, Fish was required by Bank to maintain fire, theft, liability, workers' compensation, and various umbrella insurance coverages. Stone & Michaud provided the required insurance to Fish from October 1985 to October 1989. As a result, Fish became indebted to Stone & Michaud for the value of

unpaid insurance premiums in the sum of $95,370.21 for the period October 1987 through October 1989. Although Stone & Michaud obtained a judgment against Fish in Hillsborough County (New Hampshire) Superior Court, it was to no avail, as Fish was by then protected from creditors by virtue of bankruptcy proceedings.

In conjunction with its first loan to Fish of $2,100,000 at 12 percent interest, Bank entered into another agreement with him, one that provided for an "equity kicker".[3] This agreement, entitled Agreement for Additional Interest, obligated Fish to make additional payments to Bank up to a maximum of $4,500,000. As characterized by the parties, the amount of these additional payments was to be calculated as a "percent (65%) of net profits" of the Tory Pines project, Complaint at 5, ¶ 21, or a "percentage of the proceeds ... realized from the sale or refinancing of any interest in the property, excluding the first sixteen condominium units completed for sale" at Tory Pines. Defendant's Motion for Summary Judgment at 4, ¶ 6. Bank also secured the Agreement for Additional Interest by a mortgage which was recorded on October 9, 1985, in the Hillsborough County Registry of Deeds. It is further agreed by the parties that the equity kicker agreement was amended in February 1987, reducing the maximum amount due to $4,400,000.

## III. The Dispute

At the crux of this case lies the October 1985 equity kicker arrangement, which Stone & Michaud characterizes as a "secret agreement" between Fish and Bank, concealed from it and all other creditors. Stone & Michaud states that it first learned of this secret agreement to share profits from the Tory Pines project when it received a May 31, 1990, letter from Fish. Had it known of the agreement, argues

---

**3.** An equity kicker is an agreement under which the lender receives a stake in the equity underlying the loan. *Tuxedo Beach Club Corp. v. City Fed'l Savings Bank,* 749 F.Supp. 635, 644 n. 6 (D.N.J.1990). *See also St. John Mortgage Co. v. United States Fidelity & Guaranty Co.,* 897 F.2d 1266 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990) ("equity kicker

provided that parties would share in [ ] the profits from the resale of the properties"); *Guaranty Savings & Loan Assoc. v. Federal Home Loan Bank Bd.,* 794 F.2d 1339, 1344 n. 7 (8th Cir.1986) (a lender might be a profit participant, on a percentage basis, and may upon sale of a project realize an "equity kicker").

plaintiff, it would have dictated a different credit arrangement to protect its interests.

In part, it is the alleged secret nature of the equity kicker agreement which plaintiff contends gives rise to Bank's liability. Additionally, plaintiff maintains that the secret agreement provides for payments which can only be construed as a share of profits from the Tory Pines project, and could not be interest or principal payments or debt service on the original $2,100,000 loan. Because the agreement is for profits and not interest, plaintiff argues, a partnership at law was created, thus exposing Bank to partnership liability for the unpaid insurance coverage. Plaintiff partially relies on the rule of RSA 304–A:7 IV that a sharing of the profits of a business is prima facie evidence of a partnership relationship.

Stone & Michaud also alleges that Bank engaged in certain conduct which demonstrates either that a partnership in fact existed between Bank and Fish, or that they were joint venturers. These allegations regarding Bank's conduct focus primarily upon Bank's right to control and its actual control of the Tory Pines project, which serve to implicate Bank as Fish's partner in the resort's development.

Bank's position is that it required Fish to agree to the equity kicker in order to compensate Bank for "the risk it was undertaking in providing initial financing" for the project. Affidavit of Edward V. Casavant (bank loan officer who administered several real estate loans to Fish) ("Casavant Affidavit") at 3, ¶ 8 (attached to Defendant's Motion for Summary Judgment). That risk was felt by Bank to exist as the result of a combination of factors: "absence of a demonstrated market for the project in the Tory Pines area, the fact that Fish had never successfully completed a project of this nature and scope, and the fact that Fish had secured no other funding for the project." *Id.* Moreover, Bank argues that the equity kicker agreement was not secret because it was secured by a publicly recorded mortgage.

Bank maintains that its documentary evidence establishes that a partnership rela-

tionship with Fish did not exist. In fact, it argues that the equity kicker agreement upon which plaintiff bases this action expressly disclaims the creation of any partnership. Their agreement explicitly states that the borrower, Fish, has sole responsibility for control and management of the project, that his relationship is one of debtor to creditor, and that Bank has no responsibility for any losses. Additionally, Bank contends that Stone & Michaud has set forth no facts to support its theory that Bank was a general partner or joint venturer of Fish under New Hampshire law—that plaintiff does no more than present unsubstantiated and conclusory allegations and fails to establish by way of competent evidence the existence of a disputed issue of material fact. Bank therefore claims that it is entitled to summary judgment.

*IV. The Summary Judgment Standard*

The court agrees with plaintiff that the purpose of summary judgment is issue finding, not issue determination. Indeed, at this "stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 45 (1st Cir.1990) (same). However, the court disagrees with plaintiff's understanding of the controlling standard. Plaintiff maintains that, in opposition to summary judgment, a party need only show reasonable and specific grounds for believing that evidence disputing the moving party's affidavit can be furnished at trial to defeat summary judgment. Such a construction would eliminate Rule 56's usefulness in avoiding unnecessary trials. To survive a motion for summary judgment, the burden is higher for plaintiff than it indicates.

When the moving party can demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of its claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986)

(Brennan, J., dissenting), the burden shifts to the nonmoving party to do one of three things: "(1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.*, 477 U.S. at 332 n. 3, 106 S.Ct. at 2558 n. 3 (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2727 (1983)). *Accord Local No. 48, United Bhd. of Carpenters & Joiners v. United Bhd. of Carpenters & Joiners*, 920 F.2d 1047, 1050–51 (1st Cir.1990) (delineating summary judgment standard). What the opposing party must *not* do is "[r]est upon mere allegations or denials" of the moving party's pleadings. Rule 56(e), Fed.R.Civ.P.

The evidentiary showing required of an opposing party may be made "by affidavits or as otherwise provided in this rule, [but it] must set forth *specific facts* showing that there is a genuine issue for trial." *Id.* (Emphasis added.) "Rule 56 does not invite a court to enter the realm of surmise. Evidence that is based on conjecture or farfetched supposition is not sufficient to derail the operation of the rule." *Local No. 48, supra,* 920 F.2d at 1051. Similarly, evidence that is merely colorable or not significantly probative will not derail the rule. *Id.* (citing *Anderson, supra,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11). Against this backdrop, the court considers the issues before it.

## V. Existence of Alleged Partnership

Defendant Bank has supported its motion for summary judgment with affidavits of past and present Bank vice presidents, Edward V. Casavant and W. Warren Ramirez, respectively, and with an array of other documentary evidence, including copies of the Agreement for Additional Interest, the Addendum to that Agreement, the Additional Interest Mortgage.

The thrust of Bank's argument is that, based upon the actual equity kicker agreement, as well as the New Hampshire Uniform Partnership Act, RSA 304–A, plaintiff cannot possibly establish the essential elements of its partnership/joint venture claims.[4]

The New Hampshire "statute defines a partnership as 'an association of two or more persons to carry on as co-owners a business for profit.' " *Swiezynski v. Civiello*, 126 N.H. 142, 147, 489 A.2d 634, 638 (1985) (quoting RSA 304–A:6). The legal rules which govern partnership also govern joint ventures, as the " '[p]arties in a joint venture stand in the same relationship to each other as the partners in a partnership.' " *Coe v. Watson*, 126 N.H. 456, 458, 493 A.2d 490, 491 (1985) (quoting *Humiston v. Bushnell*, 118 N.H. 759, 761, 394 A.2d 844, 845 (1978) (and citation therein to RSA 304–A:6 I)).

The important difference between a joint venture and a partnership is that in a joint venture the parties are interested in carrying on a single, particular venture, not in carrying on business together generally. *Glaser v. Medford–Marlboro Knit Gaiter Co.*, 93 N.H. 95, 100, 36 A.2d 280, 283 (1944) (citations omitted).

Both of these relationships are assumed voluntarily, and thus whether or not either relationship has been created depends upon the intent of the parties. *See Higgins v. Higgins*, 125 N.H. 806, 809, 486 A.2d 294, 296 (1984) (citation omitted) (with a partnership, requisite intent may be express, either written or oral, or implied by the parties' actions); *Lefebvre v. Waldstein*, 101 N.H. 451, 455, 146 A.2d 270, 274 (1958) (intent determinative of creation of joint enterprise). Generally, the issue of intent is a question of fact and is best left to the trier of fact to determine. *See Humiston, supra,* 118 N.H. at 761, 394 A.2d at 845 ("Whether individuals are parties in a joint venture is a question of fact for . . . trier of fact exclusively.") "However,

---

**4.** Joint venture is synonymous with joint adventure and joint enterprise. *Black's Law Dictio-nary* 753 (5th ed. 1979).

when a contract establishing the parties' relationship is clear and unambiguous, intent is determined solely from the contract, ... and may be resolved by the court as a question of law." *Hallmark Ins. Adm'rs v. Colonial Penn Life Ins. Co.*, 697 F.Supp. 319, 325 (N.D.Ill.1988) (court considered existence of a joint venture) (citations omitted).

 Similarly, in New Hampshire the proper interpretation of a contract is ultimately a question of law for its highest court, *C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 476, 578 A.2d 354, 357 (1990) (citation omitted); *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 670, 475 A.2d 12, 15 (1984) (citation omitted), and the parties' intent will be determined based on objective standards, rather than subjective, unmanifested states of mind. *C & M Realty Trust, supra*, 133 N.H. at 476, 578 A.2d at 357. Interpretation of a contract focuses upon the contracting parties' intent at the time of contracting, and, in resolving any ambiguity, involves consideration of all the provisions of their agreement taken as a whole. *R. Zoppo, supra*, 124 N.H. at 671, 475 A.2d at 15 (citations omitted).

 Bank establishes that the equity kicker agreement in the case at bar explicitly provided in paragraph 5, entitled "Relationship Between the Borrower and the Lender", that

> [t]he relationship created between the Lender ... and the Borrower ... by the Agreement and all documentation related to the Loan is that of creditor and debtor, and the Lender is not and shall not be treated as a partner of or co-venturer with the Borrower....

*See also* Casavant Affidavit at 3, ¶ 10 (reiterating contract language). This language, maintains Bank, is the clear, unambiguous statement of the intent of the parties at the time they entered into this agreement.

Bank also contends that Stone & Michaud cannot provide evidence establishing all essential elements of a partnership, particularly that Bank and Fish were "co-owners" of the Tory Pines project. RSA 304–A:6 I. " 'To state that partners are co-owners of a business is to state that they each have the power of *ultimate* control.' " *Swiezynski, supra*, 126 N.H. at 147, 489 A.2d at 638 (quoting Uniform Partnership Act § 6, comment (1), 6 U.L.A. 23 (1969)) (emphasis in original). *See also Higgins, supra*, 125 N.H. at 809, 486 A.2d at 296 (same); *Glaser, supra*, 93 N.H. at 99, 36 A.2d at 283 (citation omitted) (a right of mutual control over the subject-matter of a joint venture is essential). Again, Bank makes a showing that it had no such power. The equity kicker agreement explicitly states that "[t]he Borrower and the Lender agree that, as between them, the Borrower and not the Lender has the *sole* responsibility for the control and management of the Property...." (Emphasis added.) *See also* Casavant Affidavit at 3, ¶ 10 (Fish has "sole responsibility").

The court need go no further to conclude that Bank has averred " 'an absence of evidence to support the nonmoving party's case[.]' " *Local No. 48, supra*, 920 F.2d at 1050 (quoting *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2554). The burden thus shifts to Stone & Michaud to provide evidence sufficient to establish that a genuine issue of material fact exists necessitating a trial.

### A. Plaintiff's Burden

While plaintiff bemoans its lack of evidence, the result, it claims, of the fact that discovery has not begun, the court notes that plaintiff failed to "engage the gears of Rule 56(f) in an effort to buy time for such discovery." [5] *Id.* at 1051. This procedural "escape hatch" can be utilized by a party who requires additional time to "marshal 'facts essential to justify [its] opposition' when confronted by a summary judgment motion." *Paterson–Leitch Co. v. Mass.*

---

**5.** Rule 56(f), Fed.R.Civ.P., provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Municipal Wholesale Elec. Co.*, 840 F.2d 985, 988 (1st Cir.1988) (citation omitted). Because Stone & Michaud did nothing to "forestall[ ] the swing of the summary judgment axe," *id.* at 989, it must, therefore, bear the consequences of placing a limited record before the court.[6]

■ The threshold inquiry, as a procedural matter, is to determine what facts are properly before the court as Bank raises numerous challenges to the evidence proffered by plaintiff. Stone & Michaud relies solely upon a copy of a letter it received from Fish and upon a copy of an affidavit of Fish which Fish filed in his own action against Bank.[7] Bank maintains that the letter is of no value to Stone & Michaud, as it is conclusory and incompetent. Rule 56(e) provides that

> [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Thus, the rule in this circuit is that "a copy of a letter, even verbatim and signed, is still unauthenticated and hearsay." *Mitchell v. Dooley Bros.*, 286 F.2d 40, 41–42 (1st Cir.1960), *cert. denied*, 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236 (1961). For this reason, the court declines to consider the Fish letter as evidence in this case. *Id.* at 42. *Accord Martz v. Union Labor Life Ins.*, 757 F.2d 135, 138 (7th Cir.1985) (correspondence filed with district court which was not supported by affidavit or other-

wise authenticated constituted inadmissible hearsay); *Kelly v. Johns–Manville Corp.*, 590 F.Supp. 1089, 1097 (E.D.Pa.1984) (letter itself does not qualify as an affidavit, therefore it must be authenticated by signer's affidavit or by some substitute affidavit).

■ Plaintiff's remaining evidence, the affidavit of Fish, is the subject of Bank's motion to strike. Bank argues that numerous paragraphs in this affidavit violate the requirements of Rule 56(e) because they contain testimony that is not made on personal knowledge, or is conclusory, and/or is hearsay. Although the court denies Bank's motion to strike, it will disregard those portions of the affidavit that do not meet proper evidentiary standards.

Plaintiff contends that the Fish affidavit establishes that a genuine issue of material fact truly exists regarding the alleged partnership relationship between Fish and Bank. Fish states that Bank, after the sale of the sixteenth condominium unit, was to receive "sixty-five (65%) of the 'net cash' ... until $4,500,000 was paid," Fish Affidavit at 5, ¶ 15, and that he "understood" that this was Bank's "right to extract pure profit," *id.* at 4, ¶ 14. Plaintiff by inference seems to argue that since receipt of a share of the profits of a business is prima facie evidence of partnership, and since the amount contemplated cannot logically be construed as "interest", giving rise to a statutory exception, *see* RSA 304–A:7 IV and IV(d), then an inherent ambiguity in the language of the equity kicker agreement arises, casting doubt upon the true intent of the parties, thus presenting an issue for trial. However, even if the court accepted plaintiff's contention that the equity kicker was to result in Bank's sharing in expected profits, "this alone would not transform the lender/borrower relationship

---

**6.** Plaintiff makes the argument that the court is not restricted in its determination of summary judgment merely to documentation of this case, but that it may refer to other pleadings, affidavits and depositions filed in *other cases* before the court which might relate to the alleged existence of a partnership between Bank and Fish. The court is unpersuaded, and plaintiff provides no authority for this proposition. The burden of marshaling its facts belongs to plaintiff, and

its reliance on *Sardo v. McGrath*, 196 F.2d 20 (D.C.Cir.1952), is misplaced. While the court in *Sardo* considered the sort of material contemplated by Rule 56, that consideration was confined to the record before it.

**7.** Filed in this court as *Fish v. Bank Five for Savings*, Civ. No. 90–381–S.

into a partnership or joint venture." *Tuxedo Beach Club Corp., supra*, 749 F.Supp. at 646. Stone & Michaud still must carry the burden of establishing that a partnership exists. *Id.* Evidence regarding the sharing of profits is not enough to establish the essential elements of plaintiff's theory of partnership or joint venture. *See Higgins, supra*, 125 N.H. at 808–09, 486 A.2d at 296 (sharing of profits does not of itself establish a partnership if evidence supports a finding that one party lacked the power of ultimate control necessary to make him a co-owner of the business).

While plaintiff's complaint deals at length with allegations of Bank's power to control the Tory Pines project, the Fish affidavit only fleetingly touches on the issue, and then in a conclusory fashion. Fish Affidavit at 9, ¶ 36. Fish's statement regarding Bank's agent, Robert Tatel, gives no indication of Fish's personal knowledge, nor does it contain *specific facts* as required by Rule 56(e). Furthermore, as Bank points out, it may do no more than refer to the period between November 30, 1989, and December 31, 1989, when Bank, under temporary order of Hillsborough County Superior Court, had permission to enter the Tory Pines property to secure it against upcoming winter conditions. Plaintiff thus fails to establish that Bank had the power of ultimate control necessary to establish a partnership or joint venture relationship. As Fish himself states, "Bank was to provide me the money required ... and I was to provide the supervision and expertise for ... construction [of the project]." Fish Affidavit at 9, ¶ 35.

▮ Regarding the issue of intent, "[a] court may ignore an express contractual provision only when it concludes that a different interpretation of the contract would more accurately reflect the actual intent of the parties at the time the contract was made." *Heaton v. Boulders Properties, Inc.*, 132 N.H. 330, 336, 566 A.2d 1127, 1130 (1989) (citations omitted). Here, based upon plaintiff's lack of evidence that the actual intent of the parties was any different, the court concludes that the intent of Bank and Fish was what it was expressed to be in the equity kicker agreement: no partnership or joint venture was intended. This crucial element of intent was a subject upon which they agreed in unequivocal terms.

The court thus finds that Stone & Michaud failed to meet its burden. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex, supra*, 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan, J., dissenting) (citing *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2510). Stone & Michaud did not make out its claim, and thus Bank is entitled to summary judgment.[8]

## VI. Assumpsit

Stone & Michaud also brings a count in assumpsit alleging that Bank is liable to plaintiff for insurance coverage which was extended to Fish at Bank's request for Bank's benefit. While plaintiff's contract action of assumpsit against Fish in state court was appropriate (and successful), the court fails to find that such an action is warranted against third party Bank under the facts in this case. Since Bank avers that there can be no genuine dispute of material fact on this issue,[9] Stone & Mi-

8. Plaintiff makes the argument under *Atherton v. Tilton*, 44 N.H. 452 (1863), that where a secret agreement exists to share in profits without first paying the legitimate debts of a business, the party who takes the profits is liable for those debts resulting from contracts with persons ignorant of the secret agreement. The court finds this argument to be meritless. Plaintiff presents no evidence that Bank ever received any profits from the Tory Pines project, and Bank's evidence is to the contrary. *See* Ramirez Affidavit at 2, ¶ 7 ("Bank Five never has and never will realize even one cent on the [equity kicker agreement]").

Furthermore, it cannot be said that the existence and character of the relationship between Fish and Bank were a secret. The very equity kicker agreement upon which the case is based is referenced in the Additional Interest Mortgage, publicly recorded in 1985. Casavant Affidavit at 4 & attached Exhibit D.

9. Bank in part relies on the New Hampshire Statute of Frauds, RSA 506:2, as a bar to this action because it provides that "[n]o action shall

chaud must establish the existence of one—a tremendous hurdle here. There is no admissible evidence in the Fish affidavit which points to any express or implied contract between Bank and Stone & Michaud. *See Morgenroth & Assoc. v. Town of Tilton,* 121 N.H. 511, 514, 431 A.2d 770, 772 (1981) (explaining implied-in-fact and implied-in-law contracts). The topic of insurance is never mentioned by Fish. Plaintiff presents no evidence of any arrangement between Bank and Stone & Michaud, or of any conduct from which one could infer an agreement, or even that these two parties ever dealt with one another. *See generally, Morgenroth, supra,* 121 N.H. 511, 431 A.2d 770 (court held that plaintiff made out a claim for an implied in-fact contract based upon plaintiff's evidence of an arrangement and understanding between the parties); *Harrison v. Watson,* 116 N.H. 510, 363 A.2d 204 (1976) (evidence sustained trial court's finding and ruling that a contract was entered into based upon an "understanding" of the parties and their conduct). This court thus concludes that Stone & Michaud has not created sufficient disagreement on this issue to require its submission to a jury. *Anderson, supra,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Summary judgment should be granted when a case is "so one-sided that one party must prevail as a matter of law." *Id.*

### Conclusion

For the foregoing reasons, the court grants defendant Bank's motion for summary judgment (document no. 9) on all counts and denies defendant Bank's Amended Motion to Strike (document no. 13). The clerk shall enter judgment in accordance herewith.

SO ORDERED.

---

be brought ... to charge any person upon a special promise to answer for the debt ... of another ... unless such a promise or agreement ... is in writing." RSA 506:2 (1983). However, the court need not reach this issue to resolve the matter.