Rockingham
No. 83-495

THOMAS COE

v.

PAUL WATSON

May 6, 1985

*Holland, Donovan, Beckett and Welch P.A.*, of Exeter (*William H. M. Beckett* on the brief, and *Stephen G. Hermans* orally), for the plaintiff.

*Shaines, Madrigan and McEachern*, of Portsmouth (*Charles Cross* on the brief, and *Daniel W. Thornhill* orally), for the defendant.

SOUTER, J.   This is an appeal from the judgment of the Superior Court (*Nadeau*, J.) on Thomas Coe's petition for a declaratory judgment and an order to dissolve a joint venture, and on Paul Watson's cross-petition to dissolve a partnership. Upon the recommendation of a Master (*H. Alfred Casassa*, Esq.), the court found that the parties had agreed to end a joint venture and entered an order dividing the joint venture's assets. Watson appeals the court's dismissal of his cross-petition, and its refusal to award him relief in the form either of stock in a corporation owned by Coe or of damages and a right to share in any profits that Coe's corporation may earn. We affirm.

The parties are engineers, who were roommates at the Massachusetts Institute of Technology in the late nineteen-forties. Late in 1979 or early in 1980 they orally agreed to form a joint venture to develop and manufacture a probe used to test the quality of electrical circuit boards. Coe was to contribute up to $70,000 to finance research and development costs, including a salary to Watson of $1,300 a month. According to Coe's testimony, disputed by Watson, they agreed that if they developed a marketable probe within one

year, and could raise development capital, they would form a corporation to manufacture the probe.

During 1980, they worked at Watson's house with equipment purchased by Coe or assembled from components that he had purchased. They studied probes commercially available, and they developed one of their own. One of their potential customers testified, however, that their probe was deficient because it was not interchangeable with other probes on the market and could not readily be used in the machinery that employed such probes. Accordingly, the master denied a requested finding of fact, that on the expiration of the year the parties had developed a marketable probe.

By January of 1981, disagreements between the parties led Watson to request what he called a "no-fault divorce" from their business relationship. They proceeded to discuss possible ways to adjust their financial interests: a division of business assets; a simple buyout of one by the other; the transfer to Watson of stock in a corporation yet to be formed by Coe, in return for Watson's interest in the assets of the joint venture.

During the period of these discussions, they consulted a lawyer and accepted his advice that their disagreements would doom any plan that would associate them in a closely held corporation. Although they could not agree on how one of them might buy out the other, the master found that at the time they visited the lawyer they agreed to end the joint venture.

Almost all of the assets of the venture were then in Watson's possession. Since the parties were at a stalemate about what to do with the assets, Coe brought the original petition in the present litigation. In the meantime he had begun his own business to manufacture probes, and after the litigation began he formed a corporation to carry on that business.

■■ In this appeal the parties do not disagree about the applicable legal rules. Despite some initial dispute about classifying their business relationship as a partnership or joint venture, there is no serious dispute that the "[p]arties in a joint venture stand in the same relationship to each other as the partners in a partnership." *Humiston v. Bushnell*, 118 N.H. 759, 761, 394 A.2d 844, 845 (1978); *see* RSA 304-A:6, I. Thus, in the absence of any contrary agreement, on dissolution of the joint venture, each member is entitled to the value of his contribution and an equal share in any net profit or surplus. *See* RSA 304-A:18, I.

The dispute is, rather, about the facts to which the applicable principles must be applied. Specifically, Watson's various arguments that he has been denied appropriate relief rest on his claims

that the master erred when he found the following facts: that the joint venture agreement obligated the parties to form a corporation to produce probes only if they had developed a marketable probe of their own; that they did not develop such a probe; that they agreed to end the joint venture; and that thereafter Coe did not use any asset or secret derived from the joint venture to which Watson could claim any entitlement.

■  In reviewing such challenges to the evidentiary basis for conclusions of fact, our standard is "not whether this court would have found differently but whether a reasonable person could find as did the master." *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981). On each contested issue in this case there was evidence on which the master could reasonably find as he did. We will review that evidence briefly.

It was undisputed that Coe agreed to contribute up to $70,000, and there was evidence that in fact he contributed somewhat more than $50,000 in the course of the year. Coe was ill and unable to devote himself to the business during part of the year. Making allowance for this inactivity, the rate and amount of expenditure of money was consistent with Coe's testimony that the parties agreed to engage in a venture for a period of a year.

It is undisputed that the object of their venture was to develop a product, and this in turn supports Coe's testimony that their obligation to form a corporation was contingent on the development of a marketable product. Hence, the master was entitled to conclude that the parties had conditioned any obligation to incorporate on the development of a marketable probe within a year.

We have already alluded to the testimony of a witness familiar with the industry, that the probe that the parties developed was not interchangeable with others on the market, and hence was of limited value. When we consider the evidence that Coe has subsequently manufactured only probes designed by others, it is clear that the master could reasonably conclude that the venture produced no marketable probe and therefore that there was no obligation to incorporate a business.

■  On these facts, the master could have concluded that the joint venture ended early in 1981 in accordance with its original terms. He actually found that the parties specifically agreed to end the venture, at least by the time they jointly consulted a lawyer early in 1981.

■  The only serious argument against this conclusion rests on the fact that the parties did discuss the possible incorporation of

some sort of business early in 1981. But this fact does not compel any finding that they still considered themselves bound to form a corporation under the terms of the original joint venture agreement. The more reasonable view of the evidence is that forming a corporation to manufacture some sort of probes was only one of several alternatives that the parties considered in an effort to make use of the assets of the joint venture that had failed of its purpose. Thus, the master could reasonably find that the parties had agreed to end the joint venture, even though they were exploring possibilities for disposing of the venture's assets.

■ We have already referred to some of the evidence bearing on the last disputed finding, that Coe has not used any secret or advantage derived from the venture in a way that would entitle Watson to claim a share in whatever profit Coe may realize. Though it is undisputed that Coe has manufactured probes since the time the joint venture ended, he has produced only probes designed by others, not the probes that he and Watson designed. There was evidence that in order to manufacture these probes Coe has made a substantial investment in equipment, and it appears that virtually none of that equipment is former property of the joint venture. This evidence confirms that Coe, like Watson, has learned a lot about manufacturing probes, but it demonstrates nothing that could arguably support Watson's claim to share in whatever fruits Coe's labor and investment may produce.

Since we find the requisite evidentiary support for the disputed conclusions, the judgment will be affirmed.

*Affirmed.*

All concurred.