Hillsborough-northern judicial district
No. 95-607

MIAMI SUBS CORPORATION

v.

MURRAY FAMILY TRUST AND KENNETH DASH PARTNERSHIP

December 30, 1997

502

504

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Robert R. Lucic* on the brief), and *Hogan & Hartson, L.L.P.*, of Washington, D.C. (*John F. Dienelt* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert E. Murphy, Jr.* and *David C. Dunn* on the brief, and *Mr. Murphy* orally), for Murray Family Trust.

BROCK, C.J. The plaintiff, Miami Subs Corporation (Miami Subs), appeals an order of the Superior Court (*Barry*, J.) finding that Miami Subs: (1) breached a joint venture agreement between the Murray Family Trust and Kenneth Dash Partnership and itself; (2) breached its fiduciary duty to Murray Family Trust (MFT); and (3) is liable to MFT for damages totaling $241,000 plus attorney's fees and costs. MFT cross-appeals on numerous issues and challenges the Superior Court's (*Arnold*, J.) pretrial dismissal of one of its cross-claims. We affirm in part, reverse in part, vacate in part, and remand.

In January 1991, MFT, a private trust created by David Murray, and Kenneth Dash orally formed a general partnership, known as the Murray Family Trust and Kenneth Dash Partnership (partner-

ship). It was created for the purpose of entering into a joint venture with Miami Subs. On January 14, 1991, Miami Subs and the partnership executed a written joint venture agreement (JVA), granting the partnership the exclusive right to develop Miami Subs restaurants in New England.

The JVA provided that the parties would form two corporations to advance the purposes of the joint venture, one to perform franchise service functions and the other to perform development functions. The JVA described itself as "a brief outline for a long term relationship between the parties"; it envisioned the execution of two- and five-year development agreements between the parties that would further define the joint venture's terms. There is no evidence in the record that these agreements were ever executed.

After execution of the JVA, the partnership commenced preliminary development operations, and by March 1991 the first Miami Subs restaurant had opened in Concord. During this time, Dash began undermining the joint venture. In late January 1991, Dash procured a lease site in Windsor Locks, Connecticut. Dash signed the lease in his own name, without informing Murray, but told the president of Miami Subs, C. Ronald Petty, that he intended to transfer the lease to the partnership. In March 1991, Dash informed Petty that he was dissatisfied with the partnership. Petty later spoke with Murray, MFT's consultant, who apparently was unaware of any problems within the partnership. On April 5, Dash asked Miami Subs to grant him the Windsor Locks franchise, and within a week Miami Subs offered it to him. Dash gave Miami Subs a check for $10,000, dated April 12, which was drawn on a partnership account. The check indicated that it was a franchise fee.

On April 17, Dash told Petty that he had withdrawn from the partnership. Miami Subs sent a letter to MFT and Dash, dated April 19, stating that Miami Subs was terminating the joint venture with the partnership "[i]n view of the termination of the [partnership] and also the failure to finalize . . . various agreements" contemplated by the JVA. Also on April 19, Miami Subs transferred the Windsor Locks franchise to Dash individually. MFT did not receive the letter from Miami Subs, nor did Dash notify MFT that he had withdrawn from the partnership. It was not until April 23, during a conversation with Petty, that Murray learned of Dash's withdrawal. That day Murray received a copy of the termination letter via facsimile.

Thereafter, MFT attempted to comply with the JVA. MFT opened an additional restaurant in Nashua, and, upon Miami Subs' request, MFT took over construction and operation of the Windsor Locks

franchise. During this time, Miami Subs continued to assert that the joint venture had been terminated, but led MFT to believe that another joint venture might be possible.

In December 1991, Miami Subs filed the instant petition against the partnership, seeking a declaration that the joint venture had terminated, and that neither MFT nor Dash had succeeded to the partnership's rights under the JVA. MFT cross-petitioned for: (1) specific performance of the JVA; (2) damages for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of New Hampshire's Consumer Protection Act; and (3) injunctive relief against Miami Subs' continued violation of the JVA and interference with MFT's performance thereunder.

The trial court dismissed MFT's claims under the Consumer Protection Act, RSA chapter 358-A. After a nine-day hearing, the trial court ruled that the partnership dissolved on April 23, 1991, when Murray received actual notice of Dash's withdrawal. The court found that MFT did not succeed to the partnership's rights under the JVA and that the "dissolution of the partnership simultaneously terminated the [JVA]." Accordingly, the court found that because the JVA granted the partnership exclusive development rights in New England, Miami Subs breached the JVA when it awarded the Windsor Locks franchise to Dash on April 19. The court also ruled that Miami Subs breached its fiduciary duty to MFT by not informing Murray of Dash's individual pursuit of the Windsor Locks franchise and by granting Dash the franchise. Based on these findings of breach, the court denied Miami Subs' request for declaratory judgment, reasoning that Miami Subs had come to court with "unclean hands." *See Noddin v. Noddin,* 123 N.H. 73, 76, 455 A.2d 1051, 1053 (1983).

The court rejected MFT's cross-claim that Miami Subs breached the implied covenant of good faith and fair dealing, and denied its request for specific performance of the JVA. The court also denied MFT's claim for lost profits damages, finding that MFT's proffered calculations were "too speculative." The court did, however, award MFT damages totaling $241,000, finding that but for Miami Subs' breach, MFT "would have begun recouping" the nearly $200,000 it had invested in development efforts, and that MFT had to expend $41,000 to assume Dash's interest in the Windsor Locks franchise. Finally, the court awarded costs and attorney's fees to MFT.

Miami Subs appeals the trial court's ruling that the JVA terminated after April 19, the findings of breach of contract and fiduciary duty resulting from that ruling, and the award of damages, attor-

ney's fees, and costs to MFT. MFT cross-appeals several of the trial court's rulings, as well as the pretrial dismissal of its cross-claim under RSA chapter 358-A. We address these arguments in turn.

█ This case involves both a partnership and a joint venture. A joint venture is "an association of two or more persons formed to carry out a single business enterprise for profit." 46 AM. JUR. 2D *Joint Ventures* § 1, at 19 (1994). "[P]arties in a joint venture stand in the same relationship to each other as the partners in a partnership," *Coe v. Watson*, 126 N.H. 456, 458, 493 A.2d 490, 491 (1985) (brackets and quotation omitted), and courts generally have applied the law of partnerships to joint ventures. *See* 46 AM. JUR. 2D *Joint Ventures* § 3, at 22-23. Accordingly, we look to relevant law on joint ventures; general partnership law; and the Uniform Partnership Act (UPA), RSA chapter 304-A, to guide our resolution of this appeal. *Cf. Eastern Elec. v. Taylor Woodrow Blitman Const.*, 414 N.E.2d 1023, 1027 (Mass. App. Ct.) (finding UPA relevant to joint venture with corporate participant only where "just result" will be achieved), *review denied*, 441 N.E.2d 1042 (Mass. 1981). We will "sustain the findings and conclusions of the trial court unless they are lacking in evidential support or tainted by error of law." *Southern N.H. Water Co. v. Town of Hudson*, 139 N.H. 139, 141, 649 A.2d 847, 848 (1994) (quotation omitted).

█ Before we proceed, we note that neither Dash nor MFT are parties, individually, to this lawsuit. The trial court treated MFT as being a party in the case, however, and MFT alternately signed pleadings as itself and as the partnership. A remaining partner may assert the rights of a dissolved partnership, as MFT seeks to do in the instant case. *See* RSA 304-A:35 (1995); *cf. Tenney v. Johnson*, 43 N.H. 144, 146 (1861) (remaining partner may assert rights of partnership upon death of partner). We will treat MFT as being a party to the case, as the record does not reflect any objection to its presence. *See Allied Chemical Co. v. DeHaven*, 824 S.W.2d 257, 264-65 (Tex. Ct. App. 1992).

█ To answer the questions before us, we first must determine when the partnership dissolved. To determine the date of dissolution, we must ascertain whether the partnership was at will, for a definite term, or for a particular undertaking. A partnership at will is a partnership that is *not* formed for a particular undertaking or a specific duration of time. *See* 59A AM. JUR. 2D *Partnership* § 89, at 282 (1987). In classifying the partnership as at will, the trial court found that the oral agreement between MFT and Dash did not

provide for either a particular undertaking or a specific duration. *Cf.* RSA 304-A:31, I(a) (1995). The record supports this finding.

MFT urges us to conclude that the partnership was for a particular duration based upon the provision in the JVA for execution of two- and five-year development agreements. The provisions of the JVA, which was executed *after* the partnership was formed, cannot be read to inform the terms of the earlier partnership agreement. Further, MFT's argument that the partnership would continue for "a minimum of two years" expressly recognizes that there was no termination date for the partnership. The trial court did not err in concluding that the partnership was not for a specific duration.

We also reject MFT's argument that the partnership was formed for the "particular undertaking" of performing the JVA. For purposes of the UPA, a particular undertaking "must be capable of accomplishment at some [definite] time." *Girard Bank v. Haley*, 332 A.2d 443, 447 (Pa. 1975). Although the exact date of accomplishment need not be specified or even ascertainable at the time the partnership is formed, some date for accomplishment must be *conceivable. Id.* By contrast, business activities which may continue *indefinitely* are not "particular" in nature and do not constitute "particular undertakings." *E.g., Jordon v. Bowman Apple Products Co.*, 728 F. Supp. 409, 417 (W.D. Va. 1990). Here, the trial court found, and the parties agree, that the partnership was created for the purpose of entering into the joint venture to develop, finance, and operate Miami Subs restaurants. Although the purpose of entering into the joint venture might have been accomplished at a particular time, the purposes of development and operation would have been ongoing and could conceivably have continued indefinitely. *See id.; Girard Bank*, 332 A.2d at 447. Accordingly, the trial court did not err in concluding that the partnership was not one for a "particular undertaking," *see* RSA 304-A:31, I(a), and we affirm the trial court's conclusion that the partnership was at will.

*I. Timing of Dissolution of Partnership and Joint Venture*

We next address the question of when the partnership dissolved. Miami Subs argues that the trial court erred as a matter of law in ruling that dissolution occurred on April 23, 1991, the date Murray — and thus MFT — received actual notice of Dash's withdrawal from the partnership. Miami Subs contends that dissolution occurred on April 17, when Dash notified Miami Subs of his withdrawal. A partnership at will may be dissolved "at any time" by

the "express will" of any partner. RSA 304-A:31, I(b) (1995); *see also Bowditch v. Company*, 76 N.H. 351, 357, 82 A. 1014, 1018 (1912), *error dismissed*, 239 U.S. 627 (1915); 59A AM. JUR. 2D *Partnership* § 89. "Express will" entails *actual notice* to the other partners of an intent to dissolve. *See* 59A AM. JUR. 2D *Partnership* § 820; *Halpern v. Kantor*, 428 A.2d 1132, 1134 (Vt. 1981). Dash's notice to Miami Subs did not dissolve the partnership. Because *Murray* did not receive actual notice of Dash's withdrawal until April 23, the trial court properly concluded that the partnership did not dissolve as a matter of law until that date. RSA 304-A:31, I(b).

■ We also agree with the trial court's ruling that the joint venture dissolved by operation of law simultaneously with the dissolution of the partnership on April 23. *Cf. Peirez v. Queens P.E.P. Associates, Corp.*, 539 N.Y.S.2d 61, 63 (App. Div.) (absent agreement to contrary, joint venture to which partnership was party dissolves upon death of a partner), *appeal dismissed*, 543 N.E.2d 749 (N.Y. 1989), *appeal denied*, 552 N.E.2d 175 (N.Y. 1990). Dash's withdrawal from the partnership rendered continuation of the joint venture impossible. A joint venture consists of two or more persons, *see* 46 AM. JUR. 2D *Joint Ventures* § 1, at 19, and the dissolution of the partnership upon Dash's withdrawal left only one "person" — Miami Subs — remaining in the joint venture. *Cf. Resolution Trust Corp. v. Ocotillo West*, 840 F. Supp. 1463, 1481 (D.N.M. 1993) (because general partnership requires two or more partners, withdrawal of one partner causes dissolution); 46 AM. JUR. 2D *Joint Ventures* § 64, at 103 (joint venture to which partnership was party dissolves upon death of partner). In addition, as a matter of law, dissolution of the partnership terminated · MFT's authority to continue development efforts under the JVA. *See* RSA 304-A:33 (1995); *Egner v. States Realty Co.*, 26 N.W.2d 464, 468 (Minn. 1947). By its terms, the JVA was an agreement between Miami Subs and the partnership. MFT and Dash derived their authority to act from their status as partners in the partnership. "It is only during the existence of the partnership that a [partner] can execute an authorization conferred upon the [partnership]." *Egner*, 26 N.W.2d at 468.

## II. Miami Subs' Entitlement to Terminate JVA

Based on its conclusion that the partnership did not dissolve until April 23, the trial court ruled that Miami Subs' termination of the JVA on April 19 was wrongful. Miami Subs disputes this ruling, arguing that it was entitled to rely on Dash's representation on April 17 that he was withdrawing from the partnership.

As a partner, Dash was an agent of the partnership for the purpose of its business, see RSA 304-A:9, I (1995); *Shortlidge v. Gutoski*, 125 N.H. 510, 513, 484 A.2d 1083, 1086 (1984), and his April 17 representation to Miami Subs regarding his withdrawal from that business was binding on the partnership, see RSA 304-A:11 (1995). We therefore hold that Miami Subs was entitled to proceed as if the partnership had dissolved on April 17. *See* RSA 304-A:29 (1995); *cf. Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 517, 389 A.2d 933, 936 (1978) (describing bounds of agent's apparent authority).

The withdrawal of a co-venturer is grounds for termination of the joint venture by the remaining party. *See* 46 AM. JUR. 2D *Joint Ventures* § 31, at 60. In this case, dissolution of the partnership effectively constituted the withdrawal of Miami Subs' co-venturer. *Cf.* RSA 304-A:31, IV (partnership dissolves upon death of partner). The JVA did not provide for continuation of the joint venture upon the withdrawal of one of the parties, and the trial court found no evidence that either MFT or Dash had indicated to Miami Subs that in the event of withdrawal by one partner from the partnership the remaining partner would succeed to the other's interest and continue in the JVA. Miami Subs was entitled to rely on the partnership's dissolution, as represented by Dash, as grounds for terminating the JVA. The trial court erred in ruling otherwise.

The trial court also erred in finding that Miami Subs breached the JVA by awarding Dash the Windsor Locks franchise on April 19. The JVA granted the partnership exclusive franchise rights for the New England area, and thus the award of the Windsor Locks franchise to a party other than the partnership would have contravened the terms of the JVA so long as it was in force. Based on our holding that Miami Subs was entitled to terminate the JVA on April 19, however, it follows that Miami Subs did not breach the JVA by awarding Dash the franchise later that day. *See* 59A AM. JUR. 2D *Partnership* § 564, at 523-24. The franchise award on April 19 appears to breach the JVA, which dissolved as a matter of law on April 23; however, Miami Subs committed no actionable wrong in terminating the JVA and subsequently awarding Dash the franchise because Miami Subs was entitled to rely on Dash's statement regarding dissolution of the partnership. *See* 3 AM. JUR. 2D *Agency* § 80 (1986). Further, even assuming that there was a breach, it was not material, as the trial court found MFT suffered no damages between April 19 and April 23. The trial court's ruling that MFT, standing in the shoes of the partnership, was entitled to damages based on Miami Subs' breach of the JVA was, therefore, erroneous.

*III. Winding Up of Partnership and Joint Venture*

■ In its cross-appeal, MFT contends that dissolution of the partnership did not legally terminate the partnership, and that MFT should have been permitted to complete an initial two-year development phase of the JVA as part of the winding up of the partnership's affairs. It is true that upon dissolution a partnership does not cease to exist but continues until the "winding up" of its affairs is completed. *See* RSA 304-A:30 (1995). The process of winding up entails the settlement of partnership affairs, including the discharge of partnership obligations and the liquidation and distribution of partnership assets. *See* 59A AM. JUR. 2D *Partnership* § 1100, at 777-78; *Bowditch*, 76 N.H. at 365-66, 82 A. at 1022. During this process, remaining partners may act to complete transactions already begun but not yet finished, *see* RSA 304-A:33, but may not transact any new business. *See Shapira v. Budish*, 175 N.E. 159, 161 (Mass. 1931). When winding up is complete, the partnership is "terminated" and ceases to exist. *See Timmerman v. Timmerman*, 538 P.2d 1254, 1260 (Or. 1975); 59A AM. JUR. 2D *Partnership* § 1101, at 778.

■ In the instant case, Miami Subs affirmatively sought to relieve MFT of its obligations under the JVA by terminating the agreement. To the extent that MFT seeks to enforce the partnership's rights under the JVA, *see, e.g., Thorne v. C & S Sales Group*, 577 So. 2d 1264, 1266 (Ala. 1991) (dissolved partnership has right to enforce its contract rights), completion of the JVA's initial phase does not fall within the narrow scope of winding up. Indeed, the continuation of development efforts would be more akin to conducting new business, which is prohibited during winding up, than to liquidating assets and settling affairs. *See* RSA 304-A:30, :33; *Adelman v. United States*, 304 F. Supp. 599, 602 (D. Cal. 1969), *aff'd*, 440 F.2d 991 (9th Cir. 1971). Moreover, as discussed earlier, the dissolution of the partnership rendered continuation of the JVA effectively impossible, and MFT was not legally entitled to continue the partnership.

■ MFT also argues that even if Miami Subs rightfully dissolved the JVA upon Dash's withdrawal, the JVA did not actually terminate at that time and should have continued until *its* affairs were wound up. Again, MFT urges us to construe winding up as entailing the completion of the terms of the JVA through at least the end of its planned initial two-year contract phase. This argument fails because dissolution of a joint venture precludes further

prosecution of the venture. *See* 46 AM. JUR. 2D *Joint Ventures* § 61, at 100.

■■■ Finally, MFT asserts that upon dissolution of the JVA it was entitled to compensation for the value of its share of the joint venture property. *See* RSA 304-A:40 (1995 & Supp. 1996) (describing rules for settling accounts between partners after dissolution). Specifically, MFT contends that the JVA granted to the partnership exclusive development and franchise rights for New England, and thus, Miami Subs could not rightfully terminate the JVA or resell the partnership's rights until after an accounting of the joint venture property was conducted. *See* RSA 304-A:43 (1995). It is true that, absent an agreement to the contrary, members of a joint venture are entitled to the value of their contribution and share of the net profits of the venture upon dissolution. *See Coe*, 126 N.H. at 458, 493 A.2d at 491; *see also* RSA 304-A:38 (1995) (right of partners to application of partnership property following dissolution). The trial court, however, made no findings regarding the value of joint venture property. Nor does it appear that either party requested such findings. We will not address this issue for the first time on appeal, *see Carter v. Liberty Mut. Fire Ins. Co.*, 135 N.H. 406, 409, 605 A.2d 221, 222-23 (1992), although we do not preclude an action for an accounting of the dissolved joint venture, *see* RSA 304-A:43.

*IV. Breach of Fiduciary Duty*

We now turn to the trial court's finding that Miami Subs breached its fiduciary duty to Murray by not informing him of Dash's individual pursuit of the Windsor Locks franchise, and then breached its duty to MFT by granting the franchise to Dash on April 19. Miami Subs argues that any fiduciary duty was owed only to the partnership, not to Murray or MFT individually, and that any such duty terminated immediately upon dissolution of the partnership.

■■■ Joint venturers, like partners in a partnership, owe a fiduciary duty to one another. *See* 46 AM. JUR. 2D *Joint Ventures* § 33, at 62; RSA 304-A:21 (1995). This duty imposes an "obligation of loyalty to the joint concern in all matters affecting the conduct of the venturer's business," 46 AM. JUR. 2D *Joint Ventures* § 33, at 62, and requires good faith and full disclosure among joint venturers. *See Commerce Mortgage Co. v. Industrial Park*, 791 P.2d 132, 138 (Or. Ct. App.), *opinion adhered to as modified on reconsideration*, 793 P.2d 894 (Or. Ct. App. 1990), *review denied*, 804 P.2d 1169 (Or. 1991); *cf. Waite v. Sylvester*, 131 N.H. 663, 669, 560 A.2d 619, 623 (1989) ("Partners owe each other the duty of strictest good faith

even during an attempt to expel a fellow partner."). In the partnership context,

> [t]he fiduciary duty among partners is generally one of full and frank disclosure of all relevant information for just, equitable, and open dealings at full value and consideration. Each partner has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs. The requirement of full disclosure among partners in partnership business cannot be escaped. Each partner must refrain from making any false representations to any other partner, and must not deceive another partner by concealment of material facts.

59A AM. JUR. 2D *Partnership* § 425, at 456 (footnotes omitted). This duty of strictest good faith applies between and among members of a joint venture. *See Coe*, 126 N.H. at 458, 493 A.2d at 491; *Newton v. Aitken*, 633 N.E.2d 213, 218 (Ill. App. Ct. 1994).

 As a general rule, the fiduciary relation ends upon dissolution of a joint venture, but the duty continues during the winding up process until the venture's affairs are settled and the venture is terminated. *See Hamilton v. Williams*, 573 N.E.2d 1276, 1288 (Ill. App. Ct.), *appeal denied*, 580 N.E.2d 114 (Ill. 1991); *Fulton v. Baxter*, 596 P.2d 540, 543 (Okla. 1979). "The fiduciary obligation of partners to act with the utmost candor and good faith in their dealings between themselves is not lessened by the existence of strained relations between them or the existence of any condition which might justify the [venture]'s dissolution." 59A AM. JUR. 2D *Partnership* § 430 (footnotes omitted). Accordingly, co-venturers are obligated to conduct the winding up process so as not to damage other venturers' interests or cause loss to the venture's assets. *See Ebker v. Tan Jay Intern. Ltd.*, 741 F. Supp. 448, 469 (S.D.N.Y. 1990), *aff'd*, 930 F.2d 909 (2d Cir.), *cert. denied*, 502 U.S. 853 (1991). A co-venturer who breaches his duty is liable for any damages resulting therefrom. *See id.* at 469-70.

 The trial court's order does not readily disclose whether the court considered Miami Subs' conduct in awarding the Windsor Locks franchise to Dash as violating Miami Subs' duty to the partnership or an alleged duty to MFT individually. We conclude, however, that Miami Subs breached its duty of loyalty to the partnership by awarding the Windsor Locks franchise to Dash individually. *See Laux v. Freed*, 348 P.2d 873, 878 (Cal. 1960); *cf.*

*Waite*, 131 N.H. at 669, 560 A.2d at 623. Although we have already held that Miami Subs was entitled to rely on Dash's April 17 representation regarding dissolution, it accepted a franchise fee for Windsor Locks from Dash drawn on partnership funds before April 17. This payment raises a presumption that any rights secured in the franchise belonged to the partnership before the joint venture dissolved. *See Taber-Prang Art Co. v. Durant*, 75 N.E. 221, 221-22 (Mass. 1905). On April 19, a mere two days after Miami Subs understood that the partnership had dissolved, it transferred the franchise to Dash, individually. Several facts should have prompted Miami Subs to investigate whether the partnership had wound up and terminated before it transferred the franchise to Dash. *See Leff v. Gunther*, 658 P.2d 740, 746 (Cal. 1983) (fiduciary duty between co-venturers extends into winding up period with respect to valuable opportunities); *Commerce Mortgage Co.*, 791 P.2d at 138. Dash made comments to Miami Subs regarding his dissatisfaction with the partnership. He procured the Windsor Locks site in his name. Dash also expressed an intent to transfer the site to the partnership. Miami Subs' conduct was sufficiently contrary to the interests of the partnership, its co-venturer, to constitute a breach of fiduciary duty. *See Hamilton*, 573 N.E.2d at 1288 (fiduciary duty to co-venturers continues during winding up); *Ebker*, 741 F. Supp. at 469.

 MFT may assert the partnership's claim of breach of fiduciary duty, *see* RSA 304-A:38 (1995); 59A AM. JUR. 2D *Partnership* § 891, but no fiduciary duty runs to an individual partner in a partnership that is also a co-venturer after the joint venture and partnership have been dissolved. *Cf. Dremco, Inc. v. South Chapel Hill Gardens*, 654 N.E.2d 501 (Ill. App. Ct.), *cert. denied*, 660 N.E.2d 1267 (Ill. 1995) (joint venturers have fiduciary duty to act for each other's benefit within the scope of the venture). The trial court erred insofar as it ruled otherwise.

 Because no fiduciary duty runs to an individual partner, the trial court also erred in ruling that Miami Subs breached its fiduciary duty to Murray by "concealing" Dash's individual pursuit of the Windsor Locks franchise from Murray or MFT. Further, there was no "concealment" from either Murray or the partnership: As Dash's partner, MFT was chargeable with Dash's knowledge that he had signed the Windsor Locks lease individually, *see* RSA 304-A:12 (1995), and Dash owed a duty to inform MFT of his activities relating to partnership business, *see* RSA 304-A:21. Dash had a duty not to compete with the partnership. *See* H. REUSCHLEIN & W.

GREGORY, THE LAW OF AGENCY AND PARTNERSHIP § 188, at 281 (2d ed. 1990). Miami Subs' alleged conduct in "concealing" Dash's actions from MFT did not constitute a breach of its fiduciary duty to the *partnership*, although Dash's individual pursuit of the Windsor Locks franchise may have been a breach of *Dash's* fiduciary duty to the partnership. *See Fulton*, 596 P.2d at 543. Dash, however, is not a party to this case.

*V. Consumer Protection Act*

MFT contends that the trial court erred in dismissing its cross-claim for damages under RSA chapter 358-A. Our standard of review of a motion to dismiss is "whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." *Hickingbotham v. Burke*, 140 N.H. 28, 29-30, 662 A.2d 297, 299 (1995) (quotation, brackets, and ellipsis omitted). In conducting our review, "we accept as true the plaintiff's allegations of fact, and if the allegations constitute a basis for legal relief," we will reverse a dismissal. *Gardner v. City of Concord*, 137 N.H. 253, 256, 624 A.2d 1337, 1338 (1993).

An action under RSA chapter 358-A is not the proper avenue for relief from conduct occurring within a partnership or joint venture relationship. The consumer protection act provides that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2 (1995 & Supp. 1996). We agree with the Supreme Judicial Court of Massachusetts, ruling under its substantially similar consumer protection statute, that in partnership or joint venture disputes, the aggrieved party's remedy properly lies in a claim for breach of fiduciary duty. *See Zimmerman v. Bogoff*, 524 N.E.2d 849, 856 (Mass. 1988). The trial court was correct in dismissing the partnership's cross-claim under the New Hampshire Consumer Protection Act.

*VI. Damages*

Miami Subs appeals the trial court's award of a total of $241,000 in damages to MFT for breach of contract and fiduciary duty. We have already concluded that Miami Subs is not liable in contract to the partnership for terminating the JVA; accordingly, any part of the damages awarded by the trial court on that ground is vacated.

The trial court awarded the $241,000 as compensation for "actual losses" sustained by MFT as a result of the alleged breaches by

Miami Subs. The court declined to award damages for potential lost profits, concluding that MFT's evidence supporting such an award was "too speculative." *See Indep. Mechanical Contractors v. Gordon T. Burke & Sons*, 138 N.H. 110, 117-18, 635 A.2d 487, 491 (1993). A party claiming damages for lost profits must submit evidence that "the profits claimed were reasonably certain in the absence of the breach"; we will not award damages for "speculative losses." *Hydraform Prods. Corp. v. American Steel & Alum. Corp.*, 127 N.H. 187, 197, 498 A.2d 339, 345 (1985) (quotation omitted). Regarding the "actual losses" awarded by the trial court, we note that "where the law furnishes no precise legal measure for the recovery of damages, the amount to be awarded is largely discretionary," *Miller v. Kendall*, 804 S.W.2d 933, 941 (Tex. Ct. App. 1990). The trial court's order does not make clear whether the damages it awarded were intended to compensate for the breach of contract, which we have reversed, or the breach of fiduciary duty, which we have reversed in part and affirmed in part. We accordingly vacate the entire damages award and remand to the trial court for a determination of damages to be awarded, if any, for Miami Subs' breach of fiduciary duty to the partnership in awarding the Windsor Locks franchise to Dash.

Because the trial court will be reconsidering its damage award on remand, we observe that a portion of its original damages award appears unwarranted. Specifically, the trial court awarded MFT $41,000, the sum Miami Subs "required MFT to pay Dash . . . to remove him from the Windsor Locks deal." By all accounts, MFT received *value* for this $41,000 expenditure; namely, the Windsor Locks franchise. An amount paid for which value was received in return, unless the amount and value are substantially unequal, cannot be deemed an "actual loss" for damages calculation. *See generally McMullin v. Downing*, 135 N.H. 675, 677, 609 A.2d 1226, 1228 (1992) (contract damages account for work completed, cost of finishing work, and contract balance due).

*VII. Attorney's Fees*

Finally, Miami Subs argues that the trial court erred in awarding to MFT "all costs and reasonable attorney's fees" related to the litigation. We agree.

In New Hampshire, "[a]n award of attorney's fees is the exception rather than the rule and requires statutory authorization, an agreement between the parties, or an established exception." *Flanagan v. Prudhomme*, 138 N.H. 561, 576, 644 A.2d 51, 62 (1994) (quotation and citation omitted). We review the award of attorney's

fees for an abuse of discretion. *See Maguire v. Merrimack Mut. Ins. Co.*, 133 N.H. 51, 54, 573 A.2d 451, 453 (1990).

The trial court did not articulate its reasons for awarding attorney's fees. Because there is no remaining statutory claim nor any indication that the parties agreed to such an award, we infer that the court found that one of the established exceptions applied to this case. *See Adams v. Bradshaw*, 135 N.H. 7, 17, 599 A.2d 481, 488 (1991), *cert. denied*, 503 U.S. 960 (1992).

 The exceptions are founded on the premise that attorney's fees should be awarded only where a claim "has no reasonable basis in the facts provable by evidence, or . . . in the law as it is, or as it might arguably be held to be." *Id.; see Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 462, 617 A.2d 648, 651 (1992); *Board of Water Comm'rs, Laconia Water Works v. Mooney*, 139 N.H. 621, 629, 660 A.2d 1121, 1126 (1995). Given that we have reversed several of the trial court's rulings against the plaintiff in this case, we cannot say that the plaintiff's position was unreasonable. *See Flanagan*, 138 N.H. at 576, 644 A.2d at 62. As to our partial affirmance of the breach of fiduciary duty claim, the trial court made no findings regarding Miami Subs' conduct that would support an award of attorney's fees. *See generally Guaraldi*, 136 N.H. at 462, 617 A.2d at 651. Finally, it does not appear that the defendant requested attorney's fees in conjunction with any claim other than its dismissed statutory counterclaim. Accordingly, we conclude that the trial court abused its discretion in awarding attorney's fees to MFT, and we reverse the award.

We have considered the remaining arguments raised by the parties on appeal and conclude that they are meritless and warrant no detailed discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

> *Affirmed in part; reversed in part; vacated in part; remanded.*

All concurred.