Rockingham
No. 98-616

SHELDON ROBBINS, M.D.

v.

SALEM RADIOLOGY & a.

November 20, 2000

*Law Offices of Jack Bryan Little, P.C.*, of North Andover, Massachusetts (*Jack Bryan Little* on the brief and orally), for the plaintiff.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael R. Callahan* on the brief and orally), for the defendants.

GROFF, J., superior court justice, specially assigned under RSA 490:3. The defendants, Salem Radiology, Robert C. Hannon, M.D., Robert S. Schall, M.D., and James R. Johnston, M.D., appeal from an order of the Superior Court (*Abramson*, J.) that the valuation of the plaintiff's, Sheldon Robbins, M.D., partnership interest in Salem Radiology partnership was controlled by the Uniform Partnership Act, RSA 304-A:40 (1995) (amended 1996). The defendants further contend that the Superior Court (*Gray*, J.) erred in not

permitting them to challenge certain findings made by the appraiser who valued the plaintiff's partnership interest. We reverse and remand.

The record discloses the following pertinent facts. The plaintiff signed a two-year personal services contract to work as a radiologist for Salem Radiology on March 20, 1989. The contract provided that at the end of his employment period, the plaintiff would have the option of becoming a full partner in Salem Radiology in accordance with the terms of the existing partnership agreement. On July 1, 1991, the plaintiff became an equal partner in Salem Radiology. The plaintiff was not required to pay for his partnership interest.

On July 1, 1993, the plaintiff withdrew from Salem Radiology and requested that he receive his equal share of the accounts receivable. At that time, defendants Hannon, Schall, and Johnston were the remaining partners in Salem Radiology. Dr. Hannon disagreed with the plaintiff's valuation of his partnership interest, and paid the plaintiff three monthly installments of $18,000. On March 11, 1995, the plaintiff filed a petition with the superior court, seeking an accounting of his partnership interest.

At the hearing on the petition for an accounting, the plaintiff testified that he believed Article X of the partnership agreement applied to his withdrawal. Article X, titled "VOLUNTARY DISSO-LUTION," provides in section (a) that "[o]n a voluntary dissolution, the Partnership shall immediately commence to wind up its affairs. The Partners shall continue to share profits." The plaintiff argued that because Article X was silent as to the valuation of a withdraw-ing partner's interest, the court was required to evaluate his interest in accordance with the Uniform Partnership Act, RSA 304-A:40. Accordingly, the plaintiff contended that he was entitled to his share of the accounts receivable that existed when he withdrew from the partnership.

Dr. Hannon testified that it was his and the other partners' understanding that the partnership was not required to provide anything to a partner who voluntarily withdrew, and that the partnership agreement did not specifically provide for the valuation of a withdrawing partner's interest. Nevertheless, he stated that the plaintiff's partnership interest was to be valued in accordance with Article IX of the partnership agreement. Article IX, titled "RE-TIREMENT, DEATH AND/OR DISABILITY OF A PARTNER," states, in pertinent part, that "[t]he Partners agree that the value of a given Partner's interest in the Partnership is limited to the accumulated and undistributed fees of the Partnership."

The trial court found that Article IX did not include a provision for the voluntary withdrawal of a partner, and that in the absence of such a provision, the plaintiff's withdrawal would be governed by the Uniform Partnership Act. *See* RSA 304-A:40. As a result, the trial court found that the plaintiff was entitled to his share of the profits that were generated while he was a partner, less any liabilities incurred up to the date of dissolution.

Pursuant to this order, an appraiser calculated the value of the plaintiff's partnership interest, and the parties submitted these findings to the trial court for a confirmation hearing scheduled for August 1998. The defendants, however, took issue with some of the appraiser's accounting procedures and moved to continue the confirmation hearing. The Trial Court (*Gray*, J.) denied the request and confirmed the appraiser's report, which valued the plaintiff's partnership interest at $178,997. This appeal followed.

On appeal, the defendants argue that the trial court's application of RSA 304-A:40 was erroneous because Article IX of the partnership agreement did provide for the valuation of a voluntarily withdrawing partner's interest.

Dissolution of a partnership is defined as "the change in relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." RSA 304-A:29 (1995). RSA 304-A:40 provides specific rules for "settling accounts between the partners after dissolution, . . . subject to any agreement to the contrary." Therefore, that statute will not apply when there is an agreement to the contrary. *See Coe v. Watson*, 126 N.H. 456, 458, 493 A.2d 490, 491 (1985).

To properly address the issue before us, we begin by interpreting Salem Radiology's partnership agreement to determine whether the parties intended to provide for the valuation of a voluntarily withdrawing partner's interest.

■ Because the partnership agreement is a form of contract, *see* 59A AM. JUR. 2D *Partnership* § 96 (1987), we will apply the general rules of contract interpretation, *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995) (stating that because a lease is a form of contract, it will be construed in accordance with the standard rules of contract interpretation). "As a general rule, the proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons." *Galloway v. Chicago-Soft*, 142 N.H. 752, 756, 713 A.2d 982, 984 (1998) (quotation omitted). "In reviewing a

contract, we will give its language the interpretation that best reflects the parties' intentions." *Butler v. Walker Power, Inc.*, 137 N.H. 432, 435, 629 A.2d 91, 93 (1993) (quotation omitted). In ascertaining the parties' intent, "we consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984). Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract. *See Appeal of Reid*, 143 N.H. 246, 249, 722 A.2d 489, 492 (1998).

The trial court made no finding that the parties had any specific intent as to the meaning of Articles IX and X. Though witnesses stated their understanding of what the partnership agreement provided regarding a withdrawing partner's interest, "the intent of the parties in entering an agreement is to be judged by objective or external criteria rather than unmanifested states of mind of the parties." *Logic Assoc's Inc. v. Time Share Corp.*, 124 N.H. 565, 572, 474 A.2d 1006, 1010 (1984) (quotation omitted). Moreover, because the parties and the court relied solely upon the language of the contract in construing its terms, we need not concern ourselves with any extrinsic evidence and will review the trial court's interpretation of the contract *de novo. See Keshishian v. CMC Radiologists*, 142 N.H. 168, 177, 698 A.2d 1228, 1234 (1997).

The first paragraph of Article IX provides generally that the value of any departing partner's interest in the partnership is limited to "the accumulated and undistributed fees of the partnership." This provision is clear and unambiguous. The plaintiff argues that Article IX does not apply to a partner who voluntarily withdraws from the partnership because it is titled "RETIREMENT, DEATH AND/OR DISABILITY OF A PARTNER," and therefore is limited to partners who are retired, deceased, or disabled. This argument disregards Article XIX(a) of the partnership agreement, which specifically provides that "Paragraph or Section titles or captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or the intent of any provision thereof." The title of Article IX therefore does not limit its application to only deceased, disabled, or retired partners.

Furthermore, none of the sections of Article IX rely on Article IX's first paragraph to define the amount due a retiring, deceased, or disabled partner. For example, Article IX(a) provides in part:

(a) In the event of death or retirement of a Partner, the retired or decesaed [*sic*] Partner's estate shall receive an equal share of the fees received and undistributed at the time of death or retirement as well as an equal share of the fees received during the 90 day period immediately following said death or retirement.

Article IX(b) provides for the receipt by a disabled partner of his full share of the fees received during the first thirty days, and for five months thereafter at declining percentages of his full share. These sections are independent of the first paragraph and provide a complete basis for determining the amount to be paid to the particular departing partner. Therefore, to construe the first paragraph as applying only to deceased, retired, or disabled partners would render the first paragraph superfluous, and run contrary to our longstanding principle that "all parts of an agreement are to be given a meaning whenever reasonably possible." *Rivier College v. St. Paul Fire Ins. Co.*, 104 N.H. 398, 402, 187 A.2d 799, 803 (1963).

Moreover, to construe Article IX as not applying to a voluntarily withdrawing partner, and in turn to apply RSA 304-A:40 to determine the value of that partner's interest, would lead to a harsh and unreasonable result. Under the construction urged by the plaintiff, a partner who voluntarily withdraws after only six months would receive an amount several times greater than the amount to which a retired or deceased partner would be entitled, even if such a partner had been a member of the partnership for decades. Such an interpretation yields an inequitable result, and could not reasonably be found to have been within the intention of the parties. *See Griswold v. Heat Corporation*, 108 N.H. 119, 124, 229 A.2d 183, 187 (1967).

■ We hold that a reasonable person, under all the facts and circumstances, would conclude that Article IX applies to a withdrawing partner. The trial court's interpretation of the partnership agreement was in error. Based on the foregoing, the defendants' second issue on appeal regarding the accuracy of the appraiser's report is moot. The case is remanded for determination of the plaintiff's share of the partnership in accordance with this opinion.

*Reversed and remanded.*

NADEAU and DALIANIS, JJ., concurred; MANGONES and MOHL, JJ., superior court justices, specially assigned under RSA 490:3, concurred.